So, we'll start again with the new time. Ms. Whiteleather, you want to proceed with your argument in that part of this case. Thank you, Your Honors. N.F., again, having left the district when he was removed by the district without any meeting and without a review of the BIF, which we begged for on December 15th of 2017, we repeatedly asked for the protocols. Schaefer B. Wiest is very clear that parents, we have a burden of proof that Ms. Burson has repeatedly spoken about. We have a burden, but the burden is supposed to be ours because we can get the documents and we can hire independent individuals to assess. We couldn't get a document, and at hearing, both hearings are replete with Dr. Lope saying, oh, look, I have to change this page. This number's wrong. And despite my objections, she had about seven or eight changes to her report from 2016 that she never submitted. She indicated she found just before hearing one and hearing two. We don't know what's correct. We don't know what's appropriate. It certainly wasn't presented to the parents in 2016. So the protocols are essential. Let me ask you this. As I understand it, I don't know whether it's Dr. Lopes or Lopez or how do you say it? Lopes. Dr. Lopes. Okay, so Dr. Lopes was not an AUSD employee at that time, and she didn't provide a record to the AUSD, but she did give them to your clients, to the NF parents. So they had them, right? No, never. Never. The record says they do. No, they were never given any protocol. They were given questionnaires. They were never given the protocols. Let me just say the SER 230, 237, and 253 says that Dr. Lopes' information and report were given to your clients, the parents. For information and a report, that's not the protocols. Protocols are a separate thing. Well, let me just put it this way. The parents knew what her diagnosis was, right? No. I don't think they understood. Well, that's a different issue. I mean, basically what we're dealing with here is you keep saying the parents are unsophisticated, but they were smart enough to go to get somebody else to evaluate this. They were concerned enough they went to Dr. Miller. So I'm concerned when the record says they received the records, it's kind of hard to complain, is it not, that they don't have the protocol, but they otherwise have the report that Dr. Lopes prepared. What am I missing? If I may make it clear, let me see if I can offer a good explanation. Parents don't know what protocols are. Some don't. Parents don't. I think there are a lot of attorneys in the field who don't know what protocols are. They're the answer sheets. They're the documentation, the recording of the assessment itself. And if there are no protocols, there are several cases that indicate there was no test done. That's how a parent under Schaefer B. Wiest is able to review. So please back up for just a minute. As I understand your definition of protocols, it is the actual sort of the underlying documentation, the scoring, the sheets, the questions, the answers. It's not the report. So it's sort of the information that goes into the report that's summarized in the report. And you just said that there's several cases that say that the protocols are part of the required records. Now, there's one case that's cited in your brief, and that's the Newport Mesa Unified School District. Are there other cases? And forgive me if I implied that. I didn't mean to say that there are cases that say protocols are part of it. There are cases that say when a party loses, destroys, can't find an assessment. And by the way, Dr. Lopes, there are only two kinds of assessments. There are independent outside assessments, and there are district-funded assessments. This was a district-funded assessment. They're free to hire anybody they want. She was their independent contractor, and she, as a licensed educational psychologist, had a duty to comply with all the state laws to keep the protocols. Please, you're not really responding to my question. I'm sorry. Here is my question. Where do we go to discover whether the protocols are part of the records required under California and federal law to be turned over? Newport Mesa. Say again? Newport Mesa, Your Honor. Well, that doesn't really help me very much, because in Newport Mesa, the parties agreed that these were records, and the school district was very happy to hand them over, and this really was a copyright fight. So I didn't get a holding out of Newport Mesa that these are records that are required to be turned over when you have a dispute between the parents and the school district as to whether or not they're required to be turned over. There's an assumption because the parties so agreed. Do we have a case where that's a disputed question? Other than the Newport Mesa case, no, Your Honor, I don't. But I do have the cases cited in the brief. I'm sorry. Go ahead. Let me follow up on my colleague's question. Let's assume that Newport Mesa says what you said it does, but in this case, Dr. Lopes didn't give anything to the AUSD, so they're not there. So at worst, is that anything more than a technical violation? Yes. Why? The reason is that Schaefer B. Weiss says parents have the right. They have firepower. They can get the documents. Okay. Again, with respect, as I understand it, the school district does not have that information. I don't know whether you tried to get it from Dr. Lopes other than that she gave it to the parents, some aspect of it. But if they don't have it, they don't have it. So what do you do? What's the remedy? Do you take them outside and have them shot? What do you do? No, Your Honor, it's the same as if they control the evidence, and they under law are supposed to keep the documentation of their assessment. It's their assessment. It's not the parents' independent assessment. And what case or statute or regulation would you cite that you think is your best evidence that the school district committed something other than a technical violation by not obtaining all of the documentation that Dr. Lopes prepared other than Newport Mesa? Because I don't think that does it. Schaefer B. Weiss says we get documents so that we can challenge, and I cannot challenge without having the protocols to show what was or wasn't done. We're kind of going in circles.  They don't have the records. Your client has as much of the record as there was, apparently, and nobody has it. And you're saying you can't do anything until you have the records, and yet you say there's a violation because you don't have the records. So I don't understand what we do with this. What's the remedy? The remedy is that there was no, the parents' assessment, eventually by Dr. Grandison, any costs for not at all, and there are lots of things that weren't done. They weren't providing the counseling for him. They weren't providing ABA services the way they needed to. There were a lot of things. But let's say all that's true. What do we do now? If you're right, what's the remedy? They failed to provide, offer, and provide FAPE, and the remedy is to reimburse the parents for their costs of services that they detailed at hearing when the district refused to identify him. Did Dr. Lopes say there was no protocol record? She did. She did. She didn't have them. The district, and repeatedly, again, I can't tell if it's done right or wrong without the documents. And in the records, in the briefing, I have Schmidt v. Milwaukee and Thor v. Bosca cited both of those. A school district in California has a duty to keep records, and that's laid out very clearly in the briefing. And if it suddenly disappears or they didn't keep records of their assessment, they have the duties. The parents don't have a duty to prompt them. Let me back up and ask the question this way. I think the duty to hand over the protocols, such as the duty may or may not exist, is really a subsidiary question to whether or not Dr. Lopes' diagnosis and evaluation and diagnosis of no autism was, quote, legally compliant. And your argument is because we can't see the underlying protocols, we can't tell whether it was legally compliant. Exactly. So there's not a freestanding obligation under the federal statute to provide them. There's an obligation to provide a legally compliant diagnosis by Dr. Lopes. Well, how critical is it to deciding whether or not Dr. Lopes' diagnosis was legally compliant when we have a very detailed report by Dr. Lopes? I've read through, you may say I've read through only one of the versions of Dr. Lopes, but I've read the one that you've put into the record, and it's very detailed, gives lots of analysis, very specific as to scores on particular tests and so on. Why do I need or why do the parents have to have in order for us to make an appropriate determination as to whether or not Dr. Lopes' diagnosis of no autism was legally compliant? Because there are certain tests that would be conducted. Those are not documented in her report. There are statements. Well, she describes the tests that she conducted. Yes, she did. She said everything was perfect. Essentially, she got up and said, I did everything right. We have no records. No, she says here are the results of the tests. Right. And he scores on this test, he scores this, this, this. On that test, he scores this, this, this. And so you're just trying to check her work, meaning is that you're trying to figure out is she making a mistake when she said that he's tested X on this test and Y on that test? I mean, what are you after here? We don't even know which one of hers is correct, and she couldn't tell at hearing. I'm sorry, I missed this. Which version was correct. So, yes, we need to check. We don't have the information. She didn't have any academic testing information when she did her report. She lacked that. She couldn't even talk about his academic skills. So that information is crucial. Well, her academic skills were not part of the test. They were going to be tested by somebody else. But she didn't have that information. The district did this assessment. The burden is all on the district. But you just told me she didn't have the information, so we know that. So it's not as though you're lacking information on that point. She didn't have it. So that argument is, well, it's not legally compliant because she didn't have that information. That's not an argument that you don't have the underlying protocols. I agree. I agree. But we have a right to understand, and we can't get the information. And, again, because of the multiple changes in her report. This is right. It's another number. I don't know. Where'd you get that? Here's a different question for you. I'm sorry. We know that NF, and I assume that is identical twin brother, have the same chromosomal abnormality. When was that discovered? I think that was maybe a year or two before 2016. Okay. So everyone evaluating NF knew that at the time of the evaluations we're looking at. I would have no reason to know whether everybody knew that, Your Honor. But the information was available and knowable. Yes, it was. Okay. If I may, briefly, again, with the changes in the reports, we needed to verify. Dr. Lopes was very clear. No, no, no. No autism. No, he doesn't have autism. And yet, that's exactly what CAVA and the subsequent district public charter school has said. And as well as Karina Grandison. His behavior wasn't addressed. We continue to have problems. District claims that it has done appropriately address behavior. One of our concerns is because the district did not identify autism. And look at him in that light. Do you want to save any of your time on this case, Your Honor? I will do that right now. Let me see. And I will reserve my time. Very well. All right. Let's hear from the school district on this particular portion of the case. Yes, thank you, Your Honor. With regard to Dr. Lopes' report, there was one and only one report that was introduced into evidence at the administrative hearing. And that was Defendant's Exhibit 29. It is included in the Supplemental Excerpts of Records on Appeal at pages 245-252-255. It is true that there were typographical errors in her report. Those typographical errors related to the tables recording the numerical score. However, right before the table recording the numerical score, there was a narrative. That narrative explained what she determined. That narrative provided the correct information. For example, the numerical score was 50% or average. In the narrative, she stated she performed below average in the low range. Father testified at the hearing that he was really only concerned with the effect recognition score. And this was one of the typos that was considered by the ALJ. And when explained that the narrative was correct, the father didn't have any more confusion. The ALJ at the hearing followed up with Dr. Lopes in detail. She asked her follow-up questions about the changes, about the typographical errors. Can I interrupt, if I may? Is the report that we have at SER 95, is that the corrected report? I'm sorry, Your Honor. I'm looking at Dr. Lopes' report. It's in Supplemental Excerpts of Records beginning at page 95. I'm asking if that report, is that the corrected report? I believe so, Your Honor. That's the report that was presented to the ALJ? Yes. At the hearing, she was also asked about the other typos. The ALJ questioned the lawyers, questioned Dr. Lopes, and made a credibility determination. His conclusion was that the change in the typos that were in the report did not create any confusion. Dr. Lopes did not change her conclusion as to student's diagnosis. And the evidence put forward established that she administered the test according to the manufacturer instructions. In English, student's primary language, and without any racial or cultural bias. She used a multitude of test instruments to reach her conclusion. With regard to the protocols, I would like to mention that there is not one single authority that we found, or that a talent put forth, to say that the testing protocols being discarded by someone other than the school district, goes back and causes the school district to be punished for it. Dr. Lopes was not a school employee. She was not working for the district at the time. And most importantly, she did not provide the protocols to the district. The district never had possession of it. Under California law, under education code, under the education code, and also we cited to foul vote in our answering brief. That is a loss of the foul vote. You know, there may not be a case, but there is an administrative regulation that says that such records, I'm looking at 34 CFR 300.61, that says those records are, quote, directly related to a student, end quote, maintained by an educational agency or institution, or by a party acting for the agency or institution. I assume Dr. Lopes was acting for the institution? At the time she conducted the testing, she was acting on behalf of the school district. There you go. So I don't think, at least as far as I see it, I don't think that the school district can escape the obligation to turn over the protocols on the ground that they were, that the testing was done by Dr. Lopes, who was not their employee. Now, there may be other grounds on which they don't have to hand them over, but I don't think it works to say, well, she wasn't working for us as our employee, and therefore we don't have to hand them over. As it says, by a party acting for the agency or institution, and it very much appears, and you just conceded, of course she's acting for the institution. But then we have the issue of, let's say that's true. If you never received them and you don't have them, what do you do? What's the remedy? We never received them. We never had possession of them. The remedy is to look at the report, to conduct questioning of Dr. Lopes, which was done at length and in detail, and to examine the report. The agency, the ALJ, responded to this by saying, too late. You didn't raise this until the very end, even though you knew darn well you didn't have them, because you submitted a request for them, and they said we don't have them, and it's too late. Is that a sufficient ground upon which we can rely? The district court did not rely on it, but should we rely on that? I believe Your Honor should rely on that. A student was aware these protocols did not exist when they subpoenaed the records. The subpoena language contained specific descriptions of documents that students sought, and that included student testing protocols by Dr. Lopes. The district responded at the time that the district has no documents responsive to the subpoena that they have not already produced. At that point, the student had the opportunity to seek, with the ALJ, some remedy. She did not do so. He did not do so. He did not do it, in fact, until the closing briefs were submitted, when he, in fact, submitted a motion to shift the burden of proof. And only at that time appellant contended that we can't determine whether the testing was proper, was legally compliant, because we didn't have the protocols. And it is true that the ALJ said you have waived this argument because it was not framed earlier. The district court stated that under the education code, the school district must at least have possession of those records to be able to produce them, because they need to be maintained. Did this just go to the credibility of the expert that she doesn't have this document and it's up to the hearing officer or the judge to make that decision? Correct. That goes, again, to the deference that is owed to an administrative law judge, especially in a case like this that has a very, very detailed and lengthy written opinion that has, if I recall, it was a 31-page decision with 69 factual conclusions and 53 legal conclusions. Why is that important? That is important because case law in this circuit says that when you determine what's deferred, how great of a weight to a court a decision by an administrative law judge. You look at how detailed his or her opinion was, how complete was the factual background. And in this case, it was very complete. He attended the hearing very attentively, followed up with the witnesses. Therefore, this court on appeal should not engage in a reweighing of the evidence, in a reweighing of the credibility of the witnesses and the description of documents. I would like to also mention that let's assume for a second that there was a procedural violation in that the records were not, the testing protocols were not turned over, were not produced. A procedural violation in and of itself does not mean that the school district violated the IDEA unless there is some loss of educational opportunity benefit to the student. I submit, Your Honors, that in this case, there is no evidence, nor is there any argument presented that there was any loss of educational opportunity to the student by virtue of the testing protocols gone missing. The student was diagnosed with ADHD, anxiety, obsessive compulsive disorder, and XY chromosome disorder. For these disabilities, he was assessed and he was provided a series of services that addressed behavior issues, social, emotional, adaptive behavior. Strategies were implemented to address those behaviors, such as going to a different sensory room. If I could interrupt for just a moment. I don't think I heard you yet say that NF is not entitled to the protocols because they are not records. Are you conceding, for purposes of your argument, that the protocols are records? I am not ready to concede that they are educational records that the school district had a duty to maintain. No, no, no, I'm not. You qualify that. I'm asking whether they are records within the meaning of the statutes and the implementing regulations, not whether the school district had an obligation to maintain them. Are they records as described in the statutes and regulations? They are, correct. Testing protocols are student records, could be student records. And to continue, the procedural violation, assuming there was one, the district intends there was no procedural violation, caused no loss of educational benefit to the student. He was provided all the services that were necessary and were needed to address his behaviors and to address his deficiencies in all intellectual areas. There is evidence in the record that he actually made progress. He made good progress, and that progress was not only academic. He was making good behavior progress. He was keeping eye contact. He made friends. He was playing with other students. He had an appropriate sense of humor. He particularly liked his teacher, Ms. Alford, and the psychologist, Ms. Scott. The student made progress during 2016, 2017, 2017, 2018 school years in behavior because the school worked with the parents' assessors, Dr. Mead, and revised the behavior intervention plan, implemented her suggestions. The school paid for Dr. Mead to train the staff in how to handle the student once he moved to Carmen Dragon Elementary. Thus, even if, assuming that the violation occurred, the procedural violation occurred, there is no substantive violation of the IEDEA by virtue of not presenting the parents with the protocols. I would like to move to the second issue with Your Honor's indulgence. With regard to the student's behaviors and the revisions to his behavior intervention plan, there has been argument that the district did not meet its obligation. We submit that his behavior plan was reviewed and revised on November 14th, 2016, on March 2nd and March 21st, 2016, and it was also discussed on October 3rd, 2017, albeit that meeting was for a different purpose. As I mentioned before, the parents' behaviorist constantly corroborated with Ms. Peterson, who was the school district psychologist, to find ways to implement the behavior plan, conducted functional behavior assessments, and did everything they could according to the behavior plan provided by parents' assessor, and indeed, it got results. Student was doing better during the two years that he was at Carmen Dragon Elementary. And I see that I am out of time. I can answer any questions that the panel may have of me. Let me ask my colleagues whether either has additional questions. I think not. So we thank you very much. So, Ms. Whiteleather, you have just a little bit of time left. Would you like to do your rebuttal, please? Thank you. I don't know how anybody in this case can look at the fact that during 2017, the behaviors increased, deteriorated to the point that in January of 18, Antioch said we have to remove him because of his aggressive behaviors. That particular complaint was supplemented to the administrative record by the district court. He wasn't getting better. They had to remove him because of his aggressive behaviors. At hearing, we kept requesting. There's a 56504. You request records. And we finally issued an SDT. Bring the documents. Bring the protocols. MC versus Antelope Valley is very clear. It's cited in the brief. If you don't know that something is a fact, you can't bring it as an issue. We didn't know that the district was going to stand up, and we didn't even get a clear answer. It took the district court ordering Antioch Unified to give us a declaration, which Ms. Quinn, Special Ed Director, did, and finally said, no, we've given you all we can. Well, but as I understand it, you'd issued a request for documents matching the description here quite some time before and been told they don't have them. So didn't you know at that time that they didn't have them? That's what they said. No. No, what happened was we went in with the SDT. We need the documents. We were told repeatedly, you've been given all we have, which doesn't it? Do you have this? Do you have this? It's a real simple question. The ALJ would not even let us get an answer. It was very, very frustrating. So we tried to do that. We didn't learn that there were no protocols until we got the statement from Ms. Quinn. The fact that there's 31 pages of decisions, that's irrelevant. The procedural violations are huge. And a second overtime, they are huge if they deny the parent meaningful participation. And Ms. Burson left that out. That is a huge part of this. Let me ask my colleagues, do either of us have any additional questions? No. I think not. So we thank both Council. We know this has been a long process for you to view these two cases. So the case of NF versus Antioch Unified School District number 21-15781 is submitted. And the Court stands adjourned for the day. All rise.
judges: Siler, FLETCHER, SMITH